FILED
MAY 3 1 2016
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARC S. BARNES, | ) |
| Plaintiff, | ) |
| v. | ) Case: 1:16-cv-01027   Jury Demand |
| THE DISTRICT OF COLUMBIA, | ) Assigned To : Jackson, Ketanji Brown |
|  | ) Assign. Date : 5/31/2016 |
| and | ) Description: Pro Se Gen. Civil (F Deck) |
| CATHY LANIER  (In her official and individual capacity) | ) |
| Defendants. | ) |
|  | ) |

**COMPLAINT**

**COMES NOW,** Plaintiff, Marc S. Barnes, and files this Complaint against the defendants herein and alleges as follows:

**I. Introduction**

This is a civil action brought pursuant to federal law (42 U.S.C. §1983) and the common law of the District of Columbia seeking monetary damages for, *inter alia*, violations of plaintiff's civil, constitutional, and common law rights.

**II. Jurisdiction and Venue**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and D.C. Code §11-921 (2001ed. as amended).

RECEIVED
Mail Room
JUN 1 2016
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

2. Notice of claims against the District of Columbia was delivered on November 30, 2015, and received by the District on December 2, 2015, pursuant to DC Code §12-309 (2001).

3. Venue is properly laid in this district pursuant to 28 U.S.C. §1391(b), as the events giving rise to plaintiff's claims occurred in the District of Columbia.

### III. Parties

4. Plaintiff is a resident of the District of Columbia doing business as The Park at 14th ("the Park"), a nightclub/restaurant in the District of Columbia.

5. Defendant District of Columbia is a municipal corporation that operates and governs the Metropolitan Police Department (MPD). In the events of this case, the District of Columbia acted through its agents, employees, and servants, and the other defendant.

6. Defendant Cathy Lynn Lanier is the chief of the Metropolitan Police Department of the District of Columbia. Lanier.was at all times relevant to this action a sworn police officer employed by the District of Columbia Metropolitan Police Department (MPD), who participated in the events involved in this action in the manners described below. At all times relevant to this action she was acting under the color of the laws within the District of Columbia.

### IV. Factual Background

7. On or about May 31, 2015 in the early morning hours a male patron ('Patron 1') was assaulted by another male patron ("Patron 2") while inside the male bathroom on the third floor of the Park.

8. On information and belief, an assault took place while the male patrons were washing their hands at the bathroom sinks after Patron 1 accidentally bumped into Patron 2 who was using the first bathroom sink.

9. On information and belief, Patron 1 bumped into Patron 2 a second time after Patron 2 requested that he not touch him.

10. On information and belief, following the "second touching," Patron 2 punched Patron 1 along the left side of his face causing him to stumble backwards and hit the right side of his head on the door frame of the first bathroom stall.

11. A third male patron summoned security who entered the bathroom to find Patron 1 injured. Patron 2 (the Perpetrator) left the scene prior to the security alert and his identity remains unknown).

12. Patron 1 was escorted directly to the Customer Care located in the back of the night club

where he was examined and assessed by an Emergency Medical Technician (EMT).

13. The EMT examined Patron 1, cleaned his wound and assessed the need for Patron 1 to go to the hospital to receive requisite stitches.

14. In response, the Park manager called an ambulance to transport Parton 1 to the nearest hospital.

15. Patron 1 was resistant to receiving additional medical care and refused to go to the hospital. He insisted that his injury was not serious enough to warrant additional care.

16. When the Plaintiff arrived on the scene, Patron 1 was inside the ambulance and he was being questioned by a member of the DC MPD.

17. Patron 1 was unable to identify the culprit and stated that he could not recall what happened because he said it "happened so fast."

18. After continually requesting to leave, Patron 1 left the scene with his friends after willing providing the Park with a copy of his ID and his phone number.

19. Several MPD officers responded to the scene including two unknown officers, a sergeant, and

Detective Vogel. In addition on that evening two overtime police detail MPD officers were on duty at the Park.

20. The police officers reviewed recorded video footage of the incident and Detective Vogel received a requested copy of the Incident Report.

21. The officers also interviewed Teresa Sandoval, the bathroom attendant that witnessed the incident.

22. According to recorded video footage, 12 minutes elapsed between the occurrence of the incident in the bathroom and Patron 1's departure from the scene.

23. On May 31, Chief of Police Cathy Lanier suspended the Plaintiff's liquor licensing and order the shutdown of the Plaintiff's business operations at the Park at 6:00 pm for 96 hours.

24. On May 31, 2015, Chief of DC MPD Cathy Lanier drafted a letter (the 'Letter") to Fred Moosally, the Director of Alcoholic Beverage Regulation Administration (the "Director") requesting that the Administration revokes Plaintiff's license to sell alcoholic beverages at his place of business at the Park.

25. In the Letter, Chief of Police Lanier finds that "the continued operation of [the Park]

presents an imminent danger to the health and safety of the public."

26. In the Letter, Chief of Police Lanier finds that "there would be additional imminent danger to the health and welfare of the public if the [Park] is not closed."

27. In the Letter, Chief of Police Lanier finds that "there is no other immediate available measure [than ordering the closure of the plaintiff's business at the Park] that would ameliorate the threat to the public safety."

28. In the Letter, Chief of Police Lanier does not provide any material facts to support her damaging fad erroneous findings nor does she cite any specific crime statistics as justification for the defamatory remarks she made to the Mr. Moosally related to the Plaintiff's place of business.

29. As a sole form of "proof" to request the shutdown of the Plaintiff's business, Chief of Police Lanier offers as an attachment an Incident Report allegedly completed by Patron 1 on May 31, 2015.

30. The Incident Report alleges that Patron 1 was hit by an unknown object by an unknown assailant.

31. Following the incident, however, Patron 1 was interviewed several times by various members of law enforcement to which the Plaintiff had privy and does not recall the driver stating that he was assaulted with an unknown weapon.

32. Teresa Sandoval, (the bathroom attendant), the eyewitness to the incident reported that the unknown assailant (Patron 2) "punched [Patron 1] in the face along the left side. [Patron1] stumbled back and hit the right side of his head on the 1st bathroom stall door frame."

33. Chief Lanier was aware of the eyewitnesses' testimony prior to requesting that the Director order the closure of the Plaintiff's primary financial source of income and thereby means to support the welfare and care of his family (wife and four children).

34. In the Letter Chief Lanier makes several material misrepresentations of fact that she knew to be false prior to writing the letter.

35. As a direct result of Chief Lanier's Letter and Incident Report the ABRA launched an in-depth investigation of the Plaintiff's business operations on May 31, 2015.

36. After a thorough investigation including the review of witness statements and recorded video footage, the ABRA found that a weapon was used in the commission of the assault on Patron

and found Chief of Police Lanier's allegations and requests to close the Plaintiff's business to be without merit. In addition, the ABRA found plaintiff to be in compliance with all licensure requirements and provisions of both the Settlement Agreement and Security Plan

37. As a result of Chief of Police Lanier's temporary suspension Plaintiff suffered monumental financial loss

38. As a result of Chief of Police Lanier's temporary suspension of Plaintiff's business operations, Plaintiff suffered severe mental duress.

39. As a result of written and verbal defamatory statements made by Chief Lanier, the Plaintiff suffered public ridicule and defamation of character.

40. As a direct result of Chief Lanier's false statement and malicious acts in trying to have the plaintiff's licensure to sell alcoholic beverages permanently revoked; temporarily suspending plaintiff's licensure to sell alcoholic beverages for 4 days (96 hours); and making defamatory written and oral statements related to the plaintiff's business operations at the Park, the plaintiff has suffered undue duress, intentional infliction of emotional duress, malicious interference of business operations and contracts; defamation of character and severe financial loss.

## COUNT I

(Intentional Infliction of Emotional Distress)

41. The plaintiff incorporates the allegations in paragraphs 1 through 40 herein.

42. Defendant Lanier intentionally made false elated to the physical assault incident on May 31, 2015, at plaintiff's business operations at the Park.

43. Pursuant to the foregoing, defendant Lanier intentionally made false written and oral statements that the plaintiff's business operations at the Park presented imminent danger to the health and safety of the public.

44. Pursuant to the foregoing, defendant Lanier intentionally made false written and oral statements that the plaintiff's business operations at the Park would present further imminent danger to the health and safety of the public if it continued in operation.

45. As a result of his unjustified false statements the plaintiff was suffered public and personal embarrassment which weighted heavily on his mind and nerves resulting in his inability to focus as he normally would and many sleepless nights thinking and worrying about the Chief of DC MPD Cathy Lanier's to restrict his ability to operate his business at the Park without justifiable cause.

45. Defendant knew or should have known that emotional distress was the likely result of her outrageous, unlawful, and irresponsible conduct.

46. As a result of the Defendants' extreme and outrageous conduct, Plaintiff was, is, and with a high degree of likelihood, will continue to be emotionally distressed due to the intentional acts of Defendants.

47. At all times relevant to the events in this case, defendant Lanier worked within the scope of her employment with the District of Columbia Metropolitan Police Department.

## COUNT II

(Defamation)

48. The plaintiff incorporates the allegations in paragraphs 1 through 47 herein.

49. Officer Lanier made false statements and severely defamatory statements about the plaintiff's business operations and incident at the Park on May 31, 2015. The defendant Lanier's defamatory statements were published in local newspapers.

50. At all times relevant to the events in this case, defendant Lanier worked within the scope of her employment with the District of Columbia Metropolitan Police Department.

## COUNT III

(Intentional Interference of Business Contracts and Operations)

51. The plaintiff incorporates the allegations in paragraphs 1 through 50 herein.

52. Officer Lanier intentionally acted to prevent the plaintiff from fulfilling his contractual obligations under his business contracts and operating his business at the Park by unjustifiably ordering the suspension of his liquor license for 96 hours and requesting that the ABRA permanently revoke his licensure to operate his night club.

53. As a result of defendant Lanier's unjustified and intentional act to suspend plaintiff's license to operate his business for 96 hours, the plaintiff suffered public and personal humiliation and severe emotional distress. The embarrassment weighted heavily on his mind and nerves resulting in his inability to focus as he normally would and many sleepless nights thinking and worrying about the Chief of DC MPD Cathy Lanier's desire to restrict his ability to operate his business the Park without justifiable cause unlawful and irresponsible conduct.

54. As a result of defendant Lanier's unjustified and international act to request the permanent revocation of plaintiffs license to operate his business at the Park, the defendant endured undue scrutiny and burden as the subject of an investigation by the ABRA launched as a direct result of defendant Lanier's false statements.

55. As a result of the Defendants' extreme and outrageous conduct, Plaintiff was, is, and with a high degree of likelihood will, continue to be emotionally distressed and suffer personal and public embarrassment due to the intentional acts of Defendants in unlawfully interfering in plainitiff's business contracts and operations.

56. At all times relevant to the events in this case, defendant Lanier worked within the scope of her employment with the District of Columbia Metropolitan Police Department.

## COUNT IV

(Negligence)

57. The plaintiff incorporates the allegations in paragraphs 1 through 56 herein.

58. The District of Columbia has duty to train and supervise and discipline Metropolitan Police Department officers on District of Columbia Laws and Metropolitan Police Department policies regarding authorization to suspend business owner's liquor license and reasonable care in executing their duties.

59. Defendant Lanier failed to exercise reasonable care in the performance of her duties in investigation and interviewing witnesses to ascertain the facts prior to ordering the temporary suspension of the plainitff's business operations for the maximum allowable time under the laws of the District of Columbia.

60. At all times relevant to the events in this case, defendant Lanier worked within the scope of her employment with the District of Columbia Metropolitan Police Department.

## REQUESTED RELIEF

**WHEREFORE**, plaintiff hereby respectfully requests that this Court:

A. Enter judgment in favor of the plaintiff and hold the defendants both jointly and severally liable for compensatory damages in the amount of One Million Dollars ($1,000,000.00).

B. Enter judgement in favor of the plaintiff and find defendants both jointly and severally liable for punitive and exemplary damages in the amount of Two Million Dollars ($2,000,000.00) or an amount this Court deems appropriate; and

C. Grant plaintiff any further relief this Court may deem just and proper.

Respectfully submitted,

_____
MARC S. BARNES, *Pro Se*

920 14th Street, NW.

Washington, DC. 20005

Dated: April 31, 2016

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all Counts so triable.

Respectfully submitted,

*[signature]*

MARC S. BARNES, *Pro Se*

***Dated: April 31, 2016***